IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH F. WALKER, | : | |
| Petitioner, | : | |
| | : | 1:17-cv-0691 |
| v. | : | |
| | : | Hon. John E. Jones III |
| R.A. PERDUE, WARDEN, | : | |
| Respondent. | : | |

# **MEMORANDUM**

### **December 3, 2018**

Petitioner Joseph F. Walker ("Petitioner" or "Walker"), an inmate currently in the custody of the Federal Bureau of Prisons ("BOP"), initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Walker challenges a June 13, 2016 Notice of Action issued by the United States Parole Commission ("the Commission") "to revoke his parole and confine him for a total of 60 months, resulting in a presumptive re-parole date of September 5, 2020." (Doc. 1, p. 10). Specifically, he argues that "the Commission violated [his] Fifth Amendment due process rights by imposing a 60 months' incarceration because there was no good cause to deviate so dramatically from his guideline range of 24 to 32 months." (*Id.*)

The petition is ripe for disposition. For the reasons that follow, the Court will deny Walker's petition.

## I. BACKGROUND

Walker's criminal history and the "previous commission action" is detailed in the "D.C. Institutional Revocation Prehearing Assessment" generated on May 3, 2016. (Doc. 10-1, pp. 22-26). In 1973, he was sentenced in the State of Virginia for Murder after he and his codefendants kidnapped and murdered a man with a shotgun. (*Id.* at 22). In 1975, he was prosecuted in the United States District Court for the Eastern District of Virginia for Conspiracy to Kidnap and Use of a Firearm in the same case that resulted in the State of Virginia murder conviction. (*Id.*) A 15-year sentence was imposed. (*Id.*) Walker was initially paroled on March 3, 1989. (*Id.* at 22, 23).

He was arrested for possessing a firearm on November 30, 1990, and December 22, 1990. (*Id.* at 23). "On 2/21/91 he was arrested for PWID Cocaine while Armed. On 8/14/92 he was sentenced to serve 5-15 years in DC Superior Court. [He] had also been arrested 3/4/91 for kidnapping. He and a codefendant kidnapped a female from a convenience store, handcuffed her, forced her into a car and transported her to another location. [Walker] threatened to kill her and left the scene saying he was going to get a firearm. Police arrived and freed the victim. [He] was convicted of Kidnapping and was sentenced to serve 10-30 years in DC

Superior Court." (*Id.* at 23). A parole violator warrant was issued and filed as a detainer. (*Id.*)

In 1997, while serving his DC Superior Court sentence he was sentenced to an additional nine months' consecutive incarceration for his role in smuggling various quantities of money into prison. (*Id.*) "On 8/30/02 [Walker] was paroled from the new sentences to the consecutive 9-month sentence. He served that sentence then the parole violator warrant was executed. During August of 2003 parole was revoked in the federal kidnapping sentence and subject was reparoled after total service of 154 months (guidelines were 100-148)." (*Id.*)

In August 2004, approximately 8 months after his release, he was arrested for destruction of property after using a crowbar to force his way into the apartment of his girlfriend, Latania Earl ("Earl"), which prompted the Commission to issue and execute a warrant. (*Id.*) Earl refused to cooperate in the prosecution. (*Id.*) On December 29, 2004, the Commission reinstated his supervision and four months later, issued a Notice of Action adding special conditions of mental health aftercare, sex offender aftercare, global positioning monitoring and no contact with Earl, absent permission from his parole officer. (*Id.*)

By Notice of Action dated October 26, 2005, Walker's parole was revoked for various reasons and he was ordered to serve an additional 44 months to a

presumptive parole date of April 9, 2009. (*Id.*) However, that date was rescinded due to disciplinary infractions and he was ordered to serve an additional four months. He was "reparoled on August 7, 2009, with 5,160 days remaining to be served, a new full term date of 9/23/2023, and with special conditions of GPS, no contact with Latania Earl, sex offender and mental health aftercare, and CCC for up to 120 days." (*Id.*).

By Notice of Action dated April 17, 2014, parole was again revoked based on a February 24, 2012, conviction of Possession With Intent to Deliver crack cocaine, for which Walker received a sentence of 28 months' incarceration followed by 3 years of supervised release. (*Id.* at 23, 24). The Commission ordered a new term of 34 months and he was paroled on December 19, 2014, with the same special conditions. (*Id.* at 24).

The current revocation stems from a warrant issued on September 11, 2015. (*Id.*) Walker sets forth the background relevant to the parole revocation at issue:

> Pursuant to the Commission's warrant application [Doc. 1, pp. 25-27], Charge 1—broken down into parts 1(a) and 1(b)—accused Mr. Walker of sexual solicitation and possession with the intent to deliver cocaine. The warrant application claimed that, on September 5, 2015, Mr. Walker engaged an undercover officer in a conversation, and sought sexual favors in exchange for cocaine. Charge 2 alleged that Mr. Walker failed to report his arrest on September 5, 2015, to his supervising officer.

> Mr. Walker was ultimately convicted of possessing cocaine with the intent to distribute it, and was sentenced to 28 months' incarceration, with all but six months suspended. After serving the six months, Mr. Walker was apprehended by the US Marshals and signed his warrant on March 23, 2016. He appeared for a probable cause hearing two days later on March 25, 2016. The examiner, Mark Tanner, found probable cause on Charges 1(a) and 1(b), but did not find probable cause on Charge 2. [Doc. 1, p. 30]. Subsequently, Mr. Tanner prepared an expedited revocation recommendation and suggested that Mr. Walker serve 20 months from the date his warrant was executed, which would have resulted in a total of 26 months' incarceration. [Doc. 1, pp. 35-38]. This would have placed Mr. Walker near the low end of his guideline range of 24 to 32 months', based on a Category 3 offense severity rating and a "poor" salient factor score. Hearing examiner Lynne Jenkins also signed off on the expedited revocation recommendation, but Commissioner Massarone vetoed it. [Doc. 1, pp. 36, 37]. As a result, Mr. Walker appeared for an institutional revocation hearing before hearing examiner Joesph Pacholski on May 9, 2016.

(Doc. 1, p. 12, 13) (exhibit citations altered). The hearing examiner recommended a reparole date of May 5, 2018, after service of thirty-two months' incarceration, and participation in a 500-hour drug treatment program. (*Id.* at 15).

On May 17, 2016, Commissioner Massarone authored a Memorandum setting forth the following:

> On May 9th 2016 the USPC conducted a hearing at the FDC Philadelphia on the above inmate Mr. Joseph Walker. Mr. Walker is a 61 year old male offender appearing for his third revocation hearing to include a new criminal conviction. Mr. Walker has a long violent history and continues to violate his parole supervision. Mr. Walker incurred new charges for offenses similar to what he is currently being supervised for, Mr. Walker lacks stability at this time or the near future to successfully complete supervision. It is shown by your past and present actions while incarcerated and on parole, there is a reasonable

> probability you will not obey the laws and a risk to public safety. Therefore[,] the Commission orders the following; Continue to presumptive parole after the service of (60) months with the special conditions; Drug, Alcohol, and sex offender aftercare and no contact with Latanin [sic]Earl.

(*Id.* at 48). On June 13, 2016, the Commission issued a "Corrected Notice of Action Issued June 6, 2016" revoking Walker's parole and imposing the following conditions: (1) Revoke parole. None of the time spent on parole shall be credited; (2) Continue to a presumptive reparole on September 5, 2020 after 60 months conditioned on maintaining good institutional conduct and the development of a suitable release plan; (3) Special Drug and Alcohol Aftercare Condition; (4) Sex Offender Aftercare Condition; (5) no direct or indirect contact with Latania Earl unless approved by a Supervision Officer and the U.S. Parole Commission. (*Id.* at 43). The Commission also recommended that he attend the BOP's 500 Hour Treatment Program. (*Id.*)

> The Commission cited the following reasons:
>
> Your parole violation behavior has been rated as criminal conduct of Category Three severity because it involved: Possession with Intent to Distribute Crack Cocaine. Your salient factor score is 2…. As of May 22, 2016, you have been in confinement as a result of your violation behavior for a total of 8 month(s). Guidelines established by the Commission indicate a customary range of 34-32 months to be served before release.
>
> After review of all relevant factors and information, a decision above the guidelines is warranted because you are a more serious risk than

indicated by the guidelines in that you have a long violent history and continue to violate your parole supervision. Your past and present actions while incarcerated and on parole, indicate there is a reasonable probability you will not obey the laws and [you are a] risk to the public safety.

(*Id.* at 44).

Walker appealed to the National Appeals Board ("the Board"). The Board issued a Notice of Action on December 16, 2016, stating the following:

> The National Appeals Board finds that the Commission's reasons provide good cause for the decision to exceed the guidelines. The Commission concluded that your violent criminal record and your failure to refrain from violating the law while on parole three times demonstrated that you are a more serious risk and not likely to obey the law if released earlier than the reparole date.
>
> The Commission did not engage in double counting in its decision because your salient factor score did not fully encompass your criminal history. You have more than double the prior convictions and prior commitment to score zero in Item A and B on the Salient Factor Score, which is used to calculate the reparole guideline. Moreover, the salient factor score did not reflect the violent nature of your prior offense conduct.
>
> You also claim that the Commission's decision was unreasonable because of the Commission's arbitrary distinction between crack and powder cocaine. The National Appeals Board finds no merit to this claim. The Commission decided to depart from the guidelines based upon its assessment of risk to the public welfare and the likelihood that you would not refrain from violating the law. Your arrest for another law violation while on parole was a factor in that assessment, but whether it involved crack or powder cocaine was not.

(Doc. 10-1, p. 47).

## II. DISCUSSION

A petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 is the proper way in which a parolee may challenge parole decisions made by the United States Parole Commission, including the revocation of parole and the execution of the sentence post-revocation. *See Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000); *United States v. Kennedy*, 851 F.2d 689, 690 (3d Cir. 1988) (stating "[a] challenge to the Parole Commission's execution of a sentence is properly raised in a habeas petition under 28 U.S.C.A. § 2241."); *Alston v. Stewart*, No. 17-cv-1339, 2018 WL 1069360, at *6 (D. Md. Feb. 27, 2018) (recognizing that "[n]umerous courts have treated § 2241 as the appropriate vehicle for individuals who, like Petitioner, are D.C. Code offenders challenging the decision of the USPC to revoke their supervised release or parole."); *Cloyd v. Shartle*, No. 14-2794, 2017 WL 368416, *2 (D. N.J. Jan. 24, 2017) (acknowledging that "[p]arolees may challenge parole decisions made by the United States Parole Commission in a petition brought pursuant to 28 U.S.C. § 2241"); *Johnson v. Samuels*, No. 06-cv-2233, 2007 WL 1575076, at *1-2 (D.N.J. May 30, 2007) (finding that § 2241 petition proper way in which a federal prisoner convicted pursuant to the D.C. Code may challenge the revocation of parole); *Noble v.*

*United States Parole Comm'n*, 887 F. Supp. 11, 12 (D.D.C. 1995). Therefore, this petition is properly brought under 28 U.S.C. § 2241.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). The Commission is vested with discretion to determine a District of Columbia prisoner's eligibility for parole. *See United States v. Addonizio*, 442 U.S. 178 (1979); *Muhammad v. Mendez*, 200 F.Supp.2d 466 (M.D.Pa. 2002); *McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion). However, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir.1980) (citations omitted). "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal quotation omitted).

The Commission is vested with discretion with regard to a District of Columbia offender's parole. *See United States v. Addonizio*, 442 U.S. 178, 99 S.Ct.

2235, 60 L.Ed.2d 805 (1979); *Muhammad v. Mendez*, 200 F.Supp.2d 466 (M.D.Pa.2002); *McRae v. Hyman*, 667 A.2d 1356 (D.C.1995) (holding that the District of Columbia's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion). Specifically, the Commission "has full authority to grant, deny, or revoke a District of Columbia offender's parole, and to impose or modify conditions upon an order of parole." *Id.* (citing D.C.Code § 24–131(a)). The applicable standard of judicial review is whether the Parole Commission abused its discretion. *Furnari v. Warden*, 218 F.3d 250, 254 (3d Cir. 2000). Review is limited to whether there is a rational basis in the record for the conclusions embodied in the Commission's statement of reasons, which should include whether the criteria, appropriate, rational, and consistent with its enabling statutes, has been followed so that its decision is not arbitrary and capricious, nor based on impermissible considerations. *Id.* (citing *Zannino v. Arnold*, 531 F.2d 687, 690–91 (3d Cir. 1976)). The Court is not empowered to substitute its judgment for that of the Commission unless the Commissions' exercise of discretion represents an egregious departure from rational decision-making. *See Butler v. U.S. Parole Commission*, 570 F.Supp. 67, 77 (M.D.Pa. 1983).

Walker contends that the Commission's decision violated his due process rights because there was "no good cause to disregard the examiner's recommendation and depart dramatically form the applicable guidelines range." (Doc. 1, p. 16). He argues as follows:

> The Commission's imposition of a 60-month term of imprisonment was gratuitous and not supported by good cause, especially given the fact that *three* different hearing examiners recommended significantly shorter commitments. None of the Commission's reasons for nearly doubling the Examiner's top-of-the-guidelines recommendation presented aggravating factors that justified such a lengthy term of incarceration. Instead, Commissioner Massarone tethered his upward departure to Mr. Walker's criminal history, which was adequately accounted for by his salient factor score. In fact, Massarone failed to mention even one specific fact or circumstance that merited disregarding the Examiner's informed judgment and exceeding the guidelines range. Because the Commission lacked good cause to go above the guidelines, and did so based solely on Massarone's double counting of Mr. Walker's criminal history, the Notice of Action should be replaced with one that reflects the Examiner's recommendation.

(Doc. 1, p. 16) (emphasis in original).

Walker seeks relief based on the Commission's decision to depart from the guidelines despite the recommendation of three different hearing examiners. A two-step process is employed in parole determinations. 28 C.F.R. §§ 2.23 and 2.24. The Commission has "delegated to hearing examiners the authority necessary to conduct hearings and to make recommendations relative to the grant or denial of parole or reparole, revocation or reinstatement of parole or mandatory

11

release, and conditions of parole. Any hearing may be conducted by a single examiner or by a panel of examiners." 28 C.F.R. § 2.23(a). "The concurrence of two hearing examiners, or of a hearing examiner and the Executive Hearing Examiner, shall be required to obtain a panel recommendation to the Regional Commissioner." 28 C.F.R. § 2.23(b). Further, "[a]n examiner panel recommendation consists of two concurring examiner votes. In the event of divergent votes, the case shall be referred to another hearing examiner (or to the Executive Hearing Examiner in the case of a hearing conducted by a panel of examiners) for another vote. If concurring votes do not result from such a referral, the case shall be referred to any available hearing examiner until a panel recommendation is obtained." 28 C.F.R. § 2.23(c). It is clear, however, that "the decision of the examiners' panel is but a recommendation which is subject to review by the National Commissioners under the provisions of 28 C.F.R. § 2.24." *Smith v. Bell*, 462 F. Supp. 55, 59 (N.D.Tex. 1978). *See also Hedin v. Daniels*, 387 F. App'x 751, 753–54 (9th Cir. 2010) (held "28 C.F.R. § 2.23(a), and hearings examiners' recommendations are non-binding and become effective only upon approval of a regional commissioner, 28 C.F.R. § 2.23(d)" and "referring the case to a second commissioner for review conforms with the governing regulations. *See* 28 C.F.R. § 2.24(a) (requiring the vote of two commissioners if the decision does

not concur with the examiners' recommendation)). The panel recommendation is just that; a recommendation. Consequently, there is no merit to Walker's argument that the Commission violated his due process rights when it did not adopt the hearing examiners' recommendations.

Walker also argues that the Commission engaged in double counting in departing significantly from the guideline range. (Doc. 1, p. 19). He argues he "received a 60-month term of imprisonment because Massarone gave a single unfavorable factor —the general nature of his criminal history—twice its weight. All aspect of Mr. Walker's prior convictions were adequately accounted for by his 'poor' salient factor score, including Massarone's unsubstantiated characterization of Mr. Walker's history as 'violent.' Indeed, even if portions of Mr. Walker's prior record were violent, Massarone failed to mention a specific aggravating factor that suggested Mr. Walker was a greater risk than his guidelines indicated— despite his burden to do so." (*Id.*)

Double-counting is when the Commission uses "the same factor in scoring a prisoner pursuant to the guidelines and as an aggravating factor justifying a decision above the guidelines." *Harris v. Martin*, 792 F.2d 52, 55 (3d Cir. 1986). In considering "double-counting" claims, courts recognize the broad authority of parole officials to fully consider all relevant information when making parole

determinations. Therefore, these claims are judged by a deferential standard of review, and a parole decision will be set aside on the grounds that parole officials engaged in improper double counting only when the parole consideration of certain information was arbitrary or irrational. *See Harris*, 792 F.2d 52. Good cause for the Commission to depart from the guidelines includes "consideration of factors such as whether 'the prisoner was involved in an offense with an unusual degree of sophistication or planning or has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise.' " *Furnari*, 531 F.3d at 253 (quoting *Romano v. Baer*, 805 F.2d 268, 270 (7th Cir. 1986) (quotation marks and citation omitted)). Where the Commission has a rational basis for considering a factor in several different ways when denying parole, a "double counting" claim will fail. *Morgan v. Lamanna*, 150 F. App'x 145 (3d Cir. 2005).

The factors that may warrant a decision above the guidelines include, but are not limited to, those set forth in 28 C.F.R. § 2.80:

> (i) Poorer parole risk than indicated by salient factor score. The offender is a poorer parole risk than indicated by the salient factor score because of—
>
> > (A) Unusually persistent failure under supervision (pretrial release, probation, or parole);
> >
> > (B) Unusually persistent history of criminally related substance (drug or alcohol) abuse and resistance to treatment efforts; or

(C) Unusually extensive prior record (sufficient to make the offender a poorer risk than the "poor" prognosis category).

(ii) More serious parole risk. The offender is a more serious parole risk than indicated by the total point score because of—

(A) Prior record of violence more extensive or serious than that taken into account in the guidelines;

(B) Current offense demonstrates extraordinary criminal sophistication, criminal professionalism in the employment of violence or threats of violence, or leadership role in instigating others to commit a serious offense;

(C) Unusual cruelty to the victim (beyond that accounted for by scoring the offense as high level violence), or predation upon extremely vulnerable victim;

(D) Unusual propensity to inflict unprovoked and potentially homicidal violence, as demonstrated by the circumstances of the current offense; or

(E) Additional serious offense(s) committed after (or while on bond or fugitive status from) current offense that show unusual capacity for sustained, repeated violent criminal activity.

28 C.F.R. § 2.80. The factors that the Commission considered in issuing a decision above the guidelines documented in the May 17, 2016 Memorandum included Walker's long violent history and his continued violation of parole supervision. (Doc. 1, p. 48). It was noted that the new conduct included offenses similar to what he was currently being supervised for, which demonstrated a lack of stability and ability to successfully complete supervision at the time or in the near future.

(*Id.*)  These factors are further memorialized in the June 13, 2016 Notice of Action in which it is stated that a decision above the guidelines is warranted because "you are a more serious risk than indicated by the guidelines in that you have a long violent history and continue to violate your parole." (Doc. 10-1, p. 42).  In affirming the June 13, 2016 Notice of Action, the National Appeals Board echoed that his Salient Factor Score did not fully encompass his criminal history in that he had more than double the prior convictions and prior commitment to score zero in Item A and B on the Salient Factor Score.  (Doc. 10-1, p. 47).  Nor did his Salient Factor Score reflect the violent nature of his prior offense conduct.  (*Id.*)  The above demonstrates that the Commission's decision to depart upward from the guidelines was based on factors beyond those considered in the Salient Factor Score and in accord with 28 C.F.R. § 2.80.  Hence, the Commission did not engage in double counting in violation of Walker's due process rights.

The last argument raised by Walker is that "[t]he Examiner's 32-month recommendation was more than sufficient particularly given the fact that Mr. Walker was arbitrarily exposed to a higher guidelines range simply because he possessed cocaine base instead of powder." (Doc. 1, p. 20).  He argues that this deprived him of his due process rights because "there is no rational basis for treating crack cocaine offenses more harshly than their powder analogues." (*Id.*)

The National Appeals Board stated that there was no merit to the claim and pointed out that his arrest for another law violation while on parole was a factor in considering his reparole guideline and "whether it involved crack or powder cocaine was not." (Doc. 10-1, p. 47). Because Walker provides absolutely no support for this argument, and the only information contained in the record indicates to the contrary, we are compelled to reject the argument that the Commission violated Walker's due process rights in this regard.

## III.   CONCLUSION

Based on the foregoing, the Court will deny the petition for writ of habeas corpus.

An appropriate Order will enter.